

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable John R. Shook
Criminal District Attorney
San Antonio, Texas

Dear Sir:

Attention: Mr. S. Benton Davies

Opinion No. C-3283
Re: Is the Commissioners' Court of
Bexar County compelled to direct
the construction of a Tubercular
Hospital for which bonds in the
sum of $285,000.00 were author-
ized to be issued by the people
of the county at the November,
1940, general election?

Your request for an opinion of this department
upon the above stated questions has been received.

On March 14, 1941, you requested the opinion of this
department on the three following questions:

"(1) Is the Commissioners' Court of Bexar
County compelled to direct the construction of
a Tubercular Hospital, for which bonds in the
sum of $285,000.00 were authorized to be issued
by the people of the county at the November,
1940, general election?

"(2) What authority exists at the present
time for the Court to levy and assess taxes for
the support of such hospital, and is such tax
authorized by the Constitution?

"(3) What procedure is necessary to make
such a tubercular hospital tax legal?"

On March 29, 1941, this department wrote you a let-
ter requesting further information relative to the above ques-
tions propounded to this office concerning the building of a

Honorable John R. Shook, Page 2

tubercular hospital in said county for which hospital bonds were voted in the general election in November, 1940. In reply to our above mentioned letter, on April 5, 1941, you wrote us in part as follows:

"We acknowledge receipt also of your Opinion No. O-2599. I believe this opinion answers satisfactorily the questions No. 2 and 3 propounded to you, and it will not be necessary to go further into these questions.

"We do desire, however, an opinion on question No. 1, as propounded in our request, the same being, 'Is the Commissioners' Court of Bexar County, Texas, compelled to direct the construction of a tubercular hospital, for which bonds in the sum of $285,000.00, were authorized to be issued by the people of the County at the November 1940 General Election.'

"For your information, this proposal to build a hospital was submitted at our November General Election and at that time the Commissioners' Court submitted the same, knowing in their own minds that there was not any method by which they might levy taxes to support the said proposed hospital. The twenty-five cent fund for county purposes, as provided by the Constitution, having been already levied and allotted to other purposes, unless H. B. No. 282, might provide for additional tax levy for the support of said hospital.

"It is now contended by the people who were proposing the building of this hospital that the people having voted the $285,000.00 in bonds, it is mandatory that the bonds be issued and the hospital be built even though it must stand idle and be of no benefit whatever to the citizens of Bexar County!

"This office has held, as you will find from our opinion which was transmitted to you

Honorable John R. Shook, Page 3

with a request for an opinion, that the Com-
missioners' Court does not have to issue these
bonds, but may use its discretion in regard to
the same for the reason that to build the hos-
pital would be a useless act and would be of
no benefit whatever to the people as the same
could not be operated.

"Will you please, therefore, give us as
speedily as possible an opinion answering our
question No. 1?"

Chapter 5, Title 71, Vernon's Annotated Civil Stat-
utes, authorizes and empowers the Commissioners' Court of
any county to establish a county hospital and to enlarge any
existing hospitals for the care and treatment of persons
suffering from any illness, etc., subject to the provisions
contained in said chapter. It is further provided in said
chapter that the Commissioners' Court shall submit to the
voters at a special or regular election the proposition of
issuing bonds for the purpose of establishing or enlarging
such hospitals, and whenever any such proposition shall re-
ceive a majority of the votes of the qualified taxpayers
voting at such election, said Commissioners' Court shall
establish and maintain such hospital and have the powers
as set out in Article 4478, Vernon's Annotated Civil Stat-
utes. You state that the election was held under Article
4493, Vernon's Annotated Civil Statutes, and that there was
a favorable vote authorizing the issuance of said bonds.

The answer to your question depends upon the con-
struction of the word "shall" as used in the above mentioned
statutes. As stated in your brief the case of Moyer v. Kelly,
93 S. W. (2d) 502, the court said:

"In statutory construction the word 'shall'
is generally construed to be mandatory. . . ."

But in the case of National Surety Company v. Ledd,
116 S. W. (2d) 600, it is stated:

"In the construction of statutes the word
may may be construed to mean shall or the word
shall may be construed to mean may, according
to the intent expressed in the statute. . . ."

Honorable John R. Shook, Page 4

It is apparent that the authorities are in conflict regarding the statutory construction of the word "shall". There is a long line of authorities holding in effect the same thing. However, the words of a statute are accorded the meaning that comports with the legislative intention. Otherwise stated, the rule is that the statutory words are to be interpreted according to the sense in which they were evidently used by the Legislature. Thus when necessary to fulfill the legislative intent, the meaning of words may be extended beyond or restricted within their natural import. The legislative intention is primarily found in the language of the statute, and therefore the words implied are ordinarily given their plain meaning (Simmons vl Arnim, 220 S. W. 66; State v. Williams, 8 Tex. 255; Winder v. King, 1 S. W. (2d) 587; Texas Jurisprudence, Vol. 39, p. 194.)

We think that the word "shall" as used in the above mentioned statutes should be given its plain meaning and is used by the Legislature in this sense. As stated in Corpus Juris Secundum, Vol. 20, p. 1189:

"The effect of a favorable vote at a duly authorized bond election is to make it the duty of the proper county authorities to issue the bonds, unless discretionary power is vested in them; but such vote does not constitute a binding contract for the issuance of bonds. (Citing the cases of Wilmington, etc. R. Co. v. Onslow County, 23 S. E. 205, 116 N. C. 563; U. S.-Wadsworth v. St. Croix County, 4 F. 378)."

After a careful search of the authorities for a case in point on the above question, we have been unable to find any Texas case which decides this issue. We have considered the two cases in other jurisdictions, cited above, which held in effect that "the effect of a favorable vote at a duly authorized bond election is to make it the duty of the proper county authorities to issue the bonds, unless discretionary power is vested in them"; but after carefully considering Chapter 5, Title 71, supra, and especially Articles 4478 and 4493 contained therein, we fail to find where power is vested in the Commissioners' Court to exercise any discretion to determine whether such bonds should or should not be issued. We believe that the effect of a

Honorable John R. Shook, Page 5

favorable vote at a duly authorized bond election is to make it the duty of the Commissioners' Court to issue the bonds under the above mentioned chapter. It is our further opinion that the word "shall" as used in the said chapter in connection with the issuance of said bonds is mandatory. The matter of securing money for the purposes of maintaining and operating said hospital, after its erection, cannot be determined by this department, but must be determined by the Commissioners' Court.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Ardell Williams*

Ardell Williams
Assistant

APPROVED APR 16, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

AW:GO


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN